ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**JUDGE RAMOS**

- - - - - - - - - - - - - - - - - x
                                    :
UNITED STATES OF AMERICA            :        SEALED INDICTMENT
                                    :
          - v. -                    :        22 Cr.
                                    :
SETH MARKIN and                     :
BRANDON WONG,                       :
                                    :
          Defendants.               :
                                    :
- - - - - - - - - - - - - - - - - x

22 CRIM 395

The Grand Jury Charges:

## Overview of the Insider Trading Scheme

1.    In early 2021, SETH MARKIN and BRANDON WONG, the
defendants, together made more than $1.4 million dollars in illegal
profits by trading in stock based on inside information that MARKIN
stole from his then-girlfriend, who was at the time an attorney at
a major law firm in Washington D.C. (the "Law Firm Associate"). At
the time, MARKIN had been accepted into the Federal Bureau of
Investigation ("FBI") as a new agent trainee, and WONG was a
systems analyst at an education company. In February 2021, MARKIN
secretly looked through the Law Firm Associate's confidential work
documents, without her permission, and learned that, in a matter
of weeks, Merck & Co. ("Merck"), a publicly traded pharmaceutical
company, was going to acquire Pandion Therapeutics ("Pandion"), a
publicly traded biotechnology company, for approximately three
times the value of Pandion's share price. MARKIN immediately

purchased Pandion stock on the basis of this material non-public information and also told several family members and friends to purchase Pandion's stock, causing WONG, another friend, and several family members to do so, including Family Member-1, Family Member-2, Family Member-3, Family Member-4, and Friend-1. In text messages, MARKIN assured WONG that he was "not uncertain" that when the "news drop[ped]" about Pandion, the price would "EXPLODE" and they would earn "triple gains."

2.     BRANDON WONG, the defendant, purchased hundreds of thousands of dollars' worth of Pandion shares based on the material non-public information he received from SETH MARKIN, the defendant. In addition to his purchases of Pandion stock, WONG told at least seven other people to purchase Pandion shares, causing some of the people he tipped to purchase tens or hundreds of thousands of dollars' worth of Pandion stock, including Family Member-5, Friend-2, Friend-3, Friend-4, Friend-5, Friend-6, and Friend-7.

3.     In total, SETH MARKIN and BRANDON WONG, the defendants, together caused at least twenty people to trade in Pandion stock based on the material non-public information that MARKIN misappropriated from his girlfriend, resulting in millions of dollars of illegally obtained trading profits.

4.     After Merck's acquisition of Pandion was announced publicly, and the Pandion stockholdings of SETH MARKIN and BRANDON

WONG, the defendants, and those whom they tipped, significantly increased in value, the defendants sold their shares of Pandion for significant profits. With their illegal profits, the defendants and their tippees purchased luxury items and bought gifts for each other. For example, WONG purchased for MARKIN a Rolex watch valued at approximately $40,000, a trip to Hawaii, and a meal at a three-Michelin-starred restaurant in New York that cost over $1,000. WONG also purchased a home in Florida.

5.    Thereafter, SETH MARKIN, the defendant, lied in order to hide his illegal insider trading. In or about June 2021, after MARKIN and the Law Firm Associate had ended their relationship, and as MARKIN was preparing to begin training as a new agent at the FBI Academy in Quantico, Virginia, the Law Firm Associate called MARKIN to ask why MARKIN's name had come up in an inquiry by the Financial Industry Regulatory Authority ("FINRA") into trading in Pandion stock. In response, MARKIN lied to the Law Firm Associate and falsely claimed that he did not trade in Pandion stock. MARKIN subsequently took steps to further conceal his criminal activity, including by lying to the FBI when he was interviewed about the trading at issue in this case.

## Background

6.    Pandion was a clinical-stage biopharmaceutical company that traded under the symbol "PAND" on the Nasdaq Global Market, which is headquartered in New York, New York. In or about January

2021, Merck began confidential discussions with Pandion about a potential acquisition. Merck engaged a law firm (the "Law Firm") to represent the company in the acquisition, and the Law Firm assigned several attorneys to work on the deal, including the Law Firm Associate, who was then the girlfriend of SETH MARKIN, the defendant.

7.   In or around January and February 2021, almost all employees of the Law Firm were working from home because of COVID-19 pandemic restrictions, and the Law Firm Associate was living and working in her one-bedroom apartment. The Law Firm Associate's then-boyfriend, SETH MARKIN, the defendant, regularly worked from, and spent significant time at, her apartment, sometimes for multiple days, and sometimes when she was not present. MARKIN and his girlfriend - the Law Firm Associate - had a close romantic relationship, and they shared confidential and private details about their work and personal lives with each other. The Law Firm Associate trusted MARKIN and believed that he would maintain her confidences and keep information she shared with him confidential because, among other things, MARKIN told the Law Firm Associate that he had a security clearance, was going to be an FBI agent, was always truthful with her, and wanted to marry her.

8.   Since the Law Firm Associate was working from home, she had to and did take confidential work calls from her apartment,

sometimes on speakerphone, and also kept work documents such as binders, notes, and legal pads out in the open in her apartment. Because she trusted SETH MARKIN, the defendant, she left him alone in her apartment and gave him a key fob to access her building. The Law Firm Associated trusted that MARKIN would not look through her confidential work materials, and if he overheard or saw anything confidential, he would keep it secret.

9.    On or about January 31, 2021, the Law Firm Associate joined the team of attorneys at the Law Firm working on the Pandion acquisition. Shortly thereafter, she participated from her apartment in at least one lengthy conference call about the deal. During the call, and in emails introducing her to the transaction, the Law Firm Associate was told that Merck was considering an acquisition of Pandion, that the companies were planning to negotiate and finalize the acquisition over the next week, and that, as part of the deal, Merck was offering to purchase Pandion's shares at a price approximately three times the price at which the stock was then trading. SETH MARKIN, the defendant, was at her apartment on the day of that call. The Law Firm Associate also kept confidential documents about the acquisition in her apartment, including a binder containing agreements and notes, printed emails, and handwritten notes.

10.    The Law Firm Associate worked on the Merck/Pandion transaction over the next few weeks, including at home. On February

7, 2021, Merck submitted a proposal to acquire Pandion, and two days later, the companies preliminarily agreed on a proposal pursuant to which Merck would acquire Pandion for $60 per share. Between approximately that date and February 15, 2021, the respective law firms working on the deal exchanged drafts of the transaction documents, and by February 15, 2021, Merck and Pandion had resolved all outstanding issues on the merger agreement and transaction documents. However, that same day, Merck informed Pandion that it was not prepared to proceed with the acquisition until it had completed site audits, which it expected to finish on or about February 24, 2021. Throughout this period, the Law Firm Associate, who was working on the transaction, was updated about the status and timeline of the deal.

11. On February 25, 2021, at 6:45 a.m., Merck and Pandion announced that the companies had entered into a definitive agreement pursuant to which Merck would acquire Pandion for $60 per share in cash via a tender offer. Following the news, Pandion's stock price rose from approximately $26 per share, where it had closed the day before, to approximately $60 per share.

### The Insider Trading Scheme

12.  In February 2021, SETH MARKIN, the defendant, abused his relationship of trust and confidence with his girlfriend, the Law Firm Associate, by secretly misappropriating confidential, non-public information about the Pandion acquisition that he was able to obtain by virtue of their close relationship. Among other things, MARKIN went through the Law Firm Associate's documents and deal binder to look for material non-public information about the acquisition. He then misappropriated that material non-public information by using it to engage in insider trading in Pandion stock.

13.  Beginning on or about February 1, 2021, after the Law Firm Associate was staffed on the Pandion acquisition and participated in a conference call during which material non-public information regarding the potential acquisition was discussed, through on or about February 8, 2021, SETH MARKIN, the defendant, purchased more than 800 shares of Pandion stock across multiple brokerage accounts based on the material non-public information he had stolen from her. MARKIN also encouraged family members to purchase shares of Pandion, which at least one did on February 4, February 5, and February 8, 2021.

14.  Between on or about February 7, 2021, which was the day Merck submitted a proposal to buy Pandion, and on or about February 9, 2021, SETH MARKIN, the defendant, tipped his friend BRANDON

7

WONG, the defendant, and encouraged him to purchase shares of Pandion. On or about February 7, 2021, MARKIN texted WONG over an encrypted messaging application that MARKIN "went IN" on a certain stock in "every portfolio." On or about February 9, 2021, MARKIN and WONG spoke by phone, after which, on or about February 10, 2021, WONG purchased Pandion shares valued at more than $100,000. Neither MARKIN nor WONG had ever purchased shares of Pandion prior to February 2021. In text messages, WONG told MARKIN that if he made a lot of money, he would buy MARKIN a "nice android" and that he would take them to a "fancy restaurant." MARKIN countered that he wanted a Rolex watch.

15. Throughout the next several days, BRANDON WONG, the defendant, continued to purchase shares of Pandion based on material non-public information conveyed to him by SETH MARKIN, the defendant. MARKIN encouraged WONG to buy more shares, telling him that the stock was going to "EXPLODE tomorrow or by weeks end" when the "news drops" and that they were going to get "TRIPLE GAINS!" In order to maintain the secrecy of what they were doing, MARKIN and WONG agreed that they would refer to Pandion as "Panda," and use the "🐼" emoji in text messages.

16. By in or about February 15, 2021, SETH MARKIN, the defendant, learned about Merck's decision to delay closing the acquisition of Pandion. MARKIN told BRANDON WONG, the defendant, that "the news that was supposed to come out this week may come

out next week." MARKIN, however, assured WONG that "seeing how nobody (except the insiders) . . . knows the news is coming it shouldn't effect [sic] the price." Two days later, MARKIN tipped WONG that "everything is ready for the news to drop" and that the only holdup was that one of the company's CEOs needed to sign the deal documents. MARKIN added, "Literally any day now. All the work is done." MARKIN and WONG were so confident in the material non-public information that MARKIN had misappropriated that they both repeatedly told each other over text message, "we are not uncertain" and "🐼 is not unknown."

17. Because they believed that the announcement of Pandion's acquisition would have a significant positive effect on Pandion's share price - likely multiplying it by three - SETH MARKIN and BRANDON WONG, the defendants, put nearly all their available funds into the stock. MARKIN drained his checking account and then withdrew approximately $35,000 from his savings account to purchase more Pandion stock. WONG told MARKIN that he was investing all of his money, was going to sell all of his other stocks, take out a six-figure loan, borrow against his life insurance, take money from his mother, and use cash he received in red envelopes for Chinese New Year to purchase more Pandion stock.

18. SETH MARKIN and BRANDON WONG, the defendants, also agreed that they would tell their family members and friends about the stock, and both did so. WONG told one family member, for

instance, that Pandion was going to make an "announcement" that was not "public info" but was "big news," and that the share price was going to "🚀" upward.

19.   In total, SETH MARKIN and BRANDON WONG, the defendants, together purchased more than 35,000 shares of Pandion stock based on material non-public information that MARKIN had misappropriated from the Law Firm Associate. MARKIN and WONG also caused their family members, friends, and acquaintances, directly and indirectly, to purchase more than 26,000 shares of Pandion. On or about February 25, 2021 and later, after the news of Pandion's acquisition became public, MARKIN sold the majority of his Pandion shares and made over $80,000 in net profits from his insider trading. WONG also sold all of his Pandion shares after the acquisition was made public and made more than $1.3 million in net profits from his insider trading.

20.   After BRANDON WONG, the defendant, sold his Pandion stock, he told SETH MARKIN, the defendant, that he was going to "call up my Rolex man" and tell him "I want matching panda watches." WONG subsequently purchased two Rolex watches for himself for approximately $55,000, and a Rolex watch called the "Panda" for its design and coloring, which he presented to MARKIN as a thank you gift for the Pandion stock tip, and that was valued at approximately $40,000. WONG also told MARKIN "all the vacations are on meee [sic]," and paid for expenses during a trip to Hawaii

10

for both of them where they stayed at luxury hotels. WONG also treated MARKIN to a tasting menu at a three-Michelin-starred restaurant in Brooklyn, New York, that cost more than $1,000 for the meal. Using his illicit insider trading profits, WONG also purchased a home in Florida.

## Concealment of the Defendants' Insider Trading Scheme

21. To conceal their illegal insider trading scheme, SETH MARKIN and BRANDON WONG, the defendants, used an encrypted messaging application and deleted many of their text messages with each other. They also agreed on a cover story that they could provide to law enforcement, namely, that if they were asked how they anticipated Pandion's stock price increase, they could say they "read it on Stocktwit," a social media platform for sharing stock ideas, and falsely say that the news was "publicly being announced there."

22. After the public announcement of the Pandion acquisition, FINRA launched an inquiry into trading in Pandion stock, and asked the law firms that worked on the acquisition whether any of the names on a list of people who had placed well-timed trades in Pandion stock were recognizable. The Law Firm Associate, who by then was no longer dating SETH MARKIN, the defendant, noticed MARKIN's name on FINRA's list of traders and called MARKIN to ask him whether he had traded in Pandion stock. In response to her questions about the FINRA list, MARKIN falsely

told the Law Firm Associate that he did not trade in Pandion stock and that FINRA must have been referring to a different person named "Seth Markin" who also lived in Falls Church, Virginia, where MARKIN maintained an apartment.

23.   In or about November 2021, Special Agents from the FBI interviewed SETH MARKIN, the defendant, in connection with an investigation they told him was being conducted by law enforcement in the Southern District of New York relating to insider trading in Pandion stock. During the interview, MARKIN adhered to the fake cover story he and BRANDON WONG, the defendant, had concocted, and falsely told the agents (i) that he learned about Pandion on StockTwits, (ii) that he purchased the stock because of a recent earnings report and a new board member addition, and (iii) that he did not know that his former girlfriend worked on the Pandion transaction.

<u>COUNT ONE</u>
**(Conspiracy to Commit Securities Fraud and Tender Offer Fraud)**

24.   The allegations contained in paragraphs 1 through 23 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

25.   In or about February 2021, in the Southern District of New York and elsewhere, SETH MARKIN and BRANDON WONG, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with

each other to commit offenses against the United States, to wit, (i) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5; (ii) securities fraud, in violation of Title 18, United States Code, Section 1348; and (iii) tender offer fraud, in violation of Title 15, United States Code, Sections 78n(e) & 78ff; Title 17, Code of Federal Regulations, Sections 240.14e-3(a) & 240.14e-3(d).

26.  It was a part and object of the conspiracy that SETH MARKIN and BRANDON WONG, the defendants, and others known and unknown, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails and the facilities of national securities exchanges, would and did use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in violation of Title 17, Code of Federal Regulation, Section 240.10b-5 by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, in violation of Title 15, United States Code, Section 78j(b) and 78ff.

27.   It was further a part and object of the conspiracy that SETH MARKIN and BRANDON WONG, the defendants, and others known and unknown, would and did knowingly execute a scheme and artifice to (a) defraud persons in connection with securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, and (b) obtain, by means of false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, in violation of Title 18, United States Code, Section 1348.

28.   It was further a part and object of the conspiracy that SETH MARKIN and BRANDON WONG, the defendants, and others known and unknown, willfully and knowingly would and did engage in fraudulent, deceptive, and manipulative acts and practices in connection with a tender offer, in that after an offering person had taken substantial steps to commence a tender offer, MARKIN and WONG, while in possession of material information relating to such tender offer, which information they knew and had reason to know was non-public and which they knew and had reason to know had been acquired directly and indirectly from the offering person, the

14

issuer of the securities sought and to be sought by such tender offer, and an officer, director, partner, and employee and other person acting on behalf of the offering person and such issuer: (a) purchased and sold and caused to be purchased and sold; and (b) communicated such material, non-public information relating to a tender offer to another person under circumstances in which it was reasonably foreseeable that such communication would likely result in the purchase and sale of such securities and securities convertible into or exchangeable for such securities and options and rights to obtain and to dispose of such securities and options and rights, without such information and its source having been publicly disclosed by press release and otherwise within a reasonable time prior to such purchase and sale, in violation of Title 15, United States Code, Sections 78n(e) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.14e-3(a) and 240.14e-3(d).

## Overt Acts

29.   In furtherance of the conspiracy and to effect its illegal objects, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   Between on or about January 31, 2021 and February 24, 2021, MARKIN misappropriated confidential information about Merck's contemplated acquisition of Pandion from the Law Firm

Associate, his then-girlfriend, in order to illegally place trades in Pandion stock.

b.    Between on or about February 9, 2021 and February 24, 2021, MARKIN communicated to others material non-public information about the timing and likely price effect of the Pandion acquisition on Pandion's stock price.

c.    On or about February 1, February 2, February 3, February 4, February 5, February 8, February 16, February 19, and February 23, 2021, MARKIN purchased shares of Pandion, which were traded on the Nasdaq Global Market in New York, New York, based on material non-public information.

d.    On or about February 10, February 11, February 12, February 16, February 17, February 18, February 19, February 22, February 23, and February 24, 2021, WONG purchased shares of Pandion, which were traded on the Nasdaq Global Market in New York, New York, based on material non-public information.

(Title 18, United States Code, Section 371.)

### COUNTS TWO THROUGH FIFTEEN
### (Securities Fraud)

The Grand Jury further charges:

30.    The allegations contained in paragraphs 1 through 29 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

31.   On or about the dates set forth below, in the Southern District of New York and elsewhere, SETH MARKIN and BRANDON WONG, the defendants, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails and the facilities of national securities exchanges, used and employed manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in violation of Title 17, Code of Federal Regulation, Section 240.10b-5 by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, in violation of his duties of trust and confidence to the Law Firm Associate, MARKIN used material non-public information that he obtained from her to trade securities and provided that information to WONG and other individuals in anticipation that they would trade securities on that information, and, based on that information, MARKIN and WONG, knowing of MARKIN's breach of duty, executed and caused others to execute the securities transactions listed below on or about the dates listed below:

| Count | Defendant(s) | Trade Date(s) | Transactions |
|---|---|---|---|
| 2 | SETH MARKIN | February 1 - 23, 2021 | Purchase of 2270 shares of Pandion by SETH MARKIN |
| 3 | SETH MARKIN | February 4 - 23, 2021 | Purchase of 284 shares of Pandion by Family Member-1 |
| 4 | SETH MARKIN | February 4 - 11, 2021 | Purchase of 140.9447 shares of Pandion by Friend-1 |
| 5 | SETH MARKIN | February 11, 2021 | Purchase of 150 shares of Pandion by Family Member-2 |
| 6 | SETH MARKIN; BRANDON WONG | February 16 - 24, 2021 | Purchase of 445 shares of Pandion by Family Member-3 |
| 7 | SETH MARKIN; BRANDON WONG | February 22, 2021 | Purchase of 12 shares of Pandion by the Family Member-4 |
| 8 | SETH MARKIN; BRANDON WONG | February 10 - 24, 2021 | Purchase of 35,382 shares of Pandion by BRANDON WONG |
| 9 | SETH MARKIN; BRANDON WONG | February 22 - 24, 2021 | Purchase of 11,888 shares by Family Member-5 |
| 10 | BRANDON WONG | February 22, 2021 | Purchase of 120 shares of Pandion by Friend-2 |
| 11 | BRANDON WONG | February 22, 2021 | Purchase of 300 shares of Pandion by Friend-3 |
| 12 | BRANDON WONG | February 22 - 23, 2021 | Purchase of 20 shares of Pandion by Friend-4 |
| 13 | BRANDON WONG | February 22, 2021 | Purchase of 244.389555 shares of Pandion by Friend-5 |
| 14 | BRANDON WONG | February 22 - 24, 2021 | Purchase of 25.72887 shares of Pandion by Friend-6 |
| 15 | BRANDON WONG | February 23 - 24, 2021 | Purchase of 5000 shares of Pandion by Friend-7 |

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5, 240.10b5-1, and 240.10b5-2; and Title 18, United States Code, Section 2.)

## COUNT SIXTEEN
### (Securities Fraud)

The Grand Jury further charges:

32.  The allegations contained in paragraphs 1 through 31 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

33.  In or about February 2021, in the Southern District of New York and elsewhere, SETH MARKIN and BRANDON WONG, the defendants, knowingly executed a scheme and artifice to (a) defraud persons in connection with securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, and (b) obtain, by means of false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, to wit, MARKIN and WONG schemed to defraud MARKIN's girlfriend, the Law Firm Associate, by embezzling material non-public information from her for the purpose of executing securities transactions in Pandion.

(Title 18, United States Code, Sections 1348 and 2.)

19

## COUNTS SEVENTEEN THROUGH THIRTY
### (Tender Offer Fraud)

The Grand Jury further charges:

34. The allegations contained in paragraphs 1 through 33 are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

35. On or about the dates listed below, in the Southern District of New York and elsewhere, SETH MARKIN and BRANDON WONG, the defendants, willfully and knowingly engaged in fraudulent, deceptive, and manipulative acts and practices in connection with a tender offer, in that after an offering person had taken substantial steps to commence a tender offer, MARKIN and WONG, while in possession of material information relating to such tender offer, which information they knew and had reason to know was non-public and which they knew and had reason to know had been acquired directly and indirectly from the offering person, the issuer of the securities sought and to be sought by such tender offer, and an officer, director, partner, and employee and other person acting on behalf of the offering person and such issuer: (a) purchased and sold and caused to be purchased and sold; and (b) communicated such material, non-public information relating to a tender offer to another person under circumstances in which it was reasonably foreseeable that such communication would likely result in the purchase and sale of such securities and securities convertible

into or exchangeable for such securities and options and rights to obtain and to dispose of such securities and options and rights, without such information and its source having been publicly disclosed by press release and otherwise within a reasonable time prior to such purchase and sale, to wit, based on material non-public information related to Merck's tender offer to acquire Pandion, MARKIN and WONG executed and caused others to execute the securities transactions in Pandion stock listed below:

| Count | Defendant(s) | Order Date(s) | Transactions |
|-------|--------------|---------------|--------------|
| 17 | SETH MARKIN | February 1 - 23, 2021 | Purchase of 2270 shares of Pandion by SETH MARKIN |
| 18 | SETH MARKIN | February 4 - 23, 2021 | Purchase of 284 shares of Pandion by Family Member-1 |
| 19 | SETH MARKIN | February 4 - 11, 2021 | Purchase of 140.9447 shares of Pandion by Friend-1 |
| 20 | SETH MARKIN | February 11, 2021 | Purchase of 150 shares of Pandion by Family Member-2 |
| 21 | SETH MARKIN; BRANDON WONG | February 16 - 24, 2021 | Purchase of 445 shares of Pandion by Family Member-3 |
| 22 | SETH MARKIN; BRANDON WONG | February 22, 2021 | Purchase of 12 shares of Pandion by Family Member-4 |
| 23 | SETH MARKIN; BRANDON WONG | February 10 - 24, 2021 | Purchase of 35,382 shares of Pandion by BRANDON WONG |
| 24 | SETH MARKIN; BRANDON WONG | February 22 - 24, 2021 | Purchase of 11,888 shares by Family Member-5 |
| 25 | BRANDON WONG | February 22, 2021 | Purchase of 120 shares of Pandion by Friend-2 |
| 26 | BRANDON WONG | February 22, 2021 | Purchase of 300 shares of Pandion by Friend-3 |

| 27 | BRANDON WONG | February 22 - 23, 2021 | Purchase of 20 shares of Pandion by Friend-4 |
| 28 | BRANDON WONG | February 22, 2021 | Purchase of 244.389555 shares of Pandion by Friend-5 |
| 29 | BRANDON WONG | February 22 - 24, 2021 | Purchase of 25.72887 shares of Pandion by Friend-6 |
| 30 | BRANDON WONG | February 23 - 24, 2021 | Purchase of 5000 shares of Pandion by Friend-7 |

(Title 15, United States Code, Sections 78n(e) & 78ff; Title 17, Code of Federal Regulations, Sections 240.14e-3(a) & 240.14e-3(d); and Title 18, United States Code, Section 2.)

## COUNT THIRTY ONE
### (FALSE STATEMENTS)

The Grand Jury further charges:

36.   The allegations contained in paragraphs 1 through 35 are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

37.   On or about November 18, 2021, in the Southern District of New York and elsewhere, SETH MARKIN, the defendant, willfully and knowingly made materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit, MARKIN, while being interviewed by Special Agents of the FBI, falsely stated, among other things, that (i) he learned about Pandion on StockTwits, (ii) that he purchased the stock because of a recent earnings report and a new board member addition, and (iii)

that he did not know that his former girlfriend worked on the Pandion transaction.

(Title 18, United States Code, Section 1001(a)(2).)

## FORFEITURE ALLEGATION

38.  As a result of committing one or more of the offenses charged in Counts One through Thirty of this Indictment, SETH MARKIN and BRANDON WONG, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses alleged in Counts One through Thirty, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses that the defendants personally obtained.

## Substitute Assets Provision

39.  If any of the above-described forfeitable property, as a result of any act or omission by the defendants:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code Section 2461, to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

(Title 18, United States Code, Sections 981(a)(1)(C); Title 21,
United States Code, Section 853(p); Title 28, United States
Code, Section 2461.)


_____
FOREPERSON

_____
DAMIAN WILLIAMS
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

SETH MARKIN and
BRANDON WONG,

Defendants.

### SEALED INDICTMENT

22 Cr. _____

(Title 15, United States Code, Sections
78j(b), 78n(e), and 78ff; Title 17, Code of
Federal Regulations, Sections 240.10b-5,
240.10b5-1, 240.10b5-2, 240.14e-3(a), and
240.14e-3(d); Title 18, United States Code,
Sections 2, 371, and 1348.)

DAMIAN WILLIAMS
United States Attorney

**A TRUE BILL**

_Mark E St_
Foreperson

Sealed Indictment + True Bill + Arrest Warrants
filed before OTW on 7/21/22